ARGABRITE, APPELLANT, *v.* NEER ET AL., APPELLEES.

2016-Ohio-8374.]

(No. 2015-0348—Submitted February 9, 2016—Decided December 27, 2016.)

FRENCH, J.

{¶ 1} In this appeal, we consider the level of culpability necessary to hold a police officer liable for injuries suffered by innocent third parties as the result of a high-speed police pursuit. In particular, we consider a scenario in which the fleeing suspect's vehicle collides with a vehicle occupied by the third party. The Second District Court of Appeals held that, as a matter of law, a police officer who pursues a suspect is not the proximate cause of injuries to a third party unless the officer's conduct is extreme and outrageous. 2015-Ohio-125, 26 N.E.3d 879, ¶ 5, 7. We reject that standard because it is contrary to the express dictates of R.C. 2744.03(A)(6)(b), which prescribes a defense or immunity that political-subdivision employees may assert to establish their nonliability in a civil action for damages. Nevertheless, applying the correct standard, we conclude that none of the officers involved here could be held liable for damages as a result of their actions. Accordingly, we affirm the Second District's judgment in their favor, albeit on different grounds.

## Background

{¶ 2} In July 2011, appellant, Pamela Argabrite, was injured in a motor-vehicle accident that she alleges was the direct result of a high-speed police chase involving officers from the Miami Township Police Department and the Montgomery County Sheriff's Department. Argabrite filed a negligence action in the

Montgomery County Court of Common Pleas against appellees Jim Neer, Gregory Stites, and John DiPietro—employees of the Miami Township Police Department—and appellees Tony Ball and Daniel Adkins—employees of the Montgomery County Sheriff's Department. (We refer to appellees, collectively, as "the officers.") She alleged that the officers, while acting within the course and scope of their employment, engaged in a high-speed chase of a suspect— Andrew Barnhart—that ended when Barnhart's vehicle struck Argabrite's vehicle head-on, killing Barnhart and seriously injuring Argabrite. She claimed that the officers are not entitled to governmental immunity because their actions were willful, wanton, reckless or malicious.

{¶ 3} The officers moved for summary judgment on two distinct grounds. First, they argued that, as a matter of law, their actions were not the proximate cause of Argabrite's injuries because their conduct was not extreme or outrageous. In support of that argument, they cited *Whitfield v. Dayton*, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532 (2d Dist.), *overruled in part on other grounds, Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. Second, the officers argued that they are entitled to immunity as employees of political subdivisions under R.C. 2744.03(A)(6)(b) because they did not act "with malicious purpose, in bad faith, or in a wanton and reckless manner."

{¶ 4} The trial court granted summary judgment in favor of the officers based on *Whitfield*, in which the Second District applied a rule that "when police officers pursue a fleeing violator who injures a third party, the officers' pursuit is not the proximate cause of the injuries unless their conduct was outrageous or extreme." *Id.* at ¶ 22, citing *Lewis v. Bland*, 75 Ohio App.3d 453, 599 N.E.2d 814 (9th Dist.1991). The trial court stated that no reasonable juror could conclude that the officers engaged in extreme or outrageous conduct and, therefore, no reasonable juror could conclude that the officers' actions were the proximate cause of the accident.

{¶ 5} On appeal, the Second District likewise applied the no-proximate-cause rule from *Whitfield* and affirmed the trial court's entry of summary judgment. We accepted Argabrite's discretionary appeal. 143 Ohio St.3d 1440, 2015-Ohio-3427, 36 N.E.3d 188.

## *Analysis*

### Statutory political-subdivision immunity

{¶ 6} We begin our analysis by looking to relevant statutes that cloak employees of political subdivisions with immunity. R.C. Chapter 2744 sets out circumstances under which political subdivisions and their employees are liable in tort in connection with governmental and proprietary functions. Political-subdivision

immunity is an affirmative defense. *Whitehall ex rel. Wolfe v. Civ. Rights Comm.*, 74 Ohio St.3d 120, 123, 656 N.E.2d 684 (1995).

{¶ 7} Argabrite asserts claims against political-subdivision employees. We therefore turn to R.C. 2744.03(A), which prescribes defenses or immunities that an employee of a political subdivision may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. As relevant here, an employee of a political subdivision is immune from liability *unless* the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b). This standard applies to law-enforcement officers just as it applies to other employees of political subdivisions. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994).

{¶ 8} We focus here on the phrase "wanton or reckless manner." This court has defined "wanton misconduct" as "the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." (Emphasis added.) *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph three of the syllabus. And we have defined "reckless conduct" as conduct "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. These are rigorous standards that will in most circumstances be difficult to establish, especially with respect to a law-enforcement officer carrying out the statutory duty to arrest and detain a person violating the law. *See* R.C. 2935.03(A)(1).

**Conflict between no-proximate-cause rule and statutory immunity**

{¶ 9} Both the trial court and the appellate court in this case acknowledged R.C. 2744.03(A)(6) and its applicability to police officers. But rather than analyzing this case under the immunity statute, both courts skipped the question of immunity and applied the judicially created no-proximate-cause rule from *Whitfield* and *Lewis*.

{¶ 10} When a plaintiff files a civil action against an employee of a political subdivision, the employee's entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim. Here, for example, if the officers had acted recklessly, they would not be entitled to immunity, but they could still avoid liability by establishing that their reckless actions were not the proximate cause of Argabrite's injuries. Justice Kennedy's concurring opinion accuses the majority of blurring the distinction between the affirmative defense of immunity and the tort element of proximate cause, but that charge is a nonstarter. It is the no-proximate-cause rule itself that blurs those

distinctions by incorporating concepts related to duty and breach that are part of the statutory-immunity standards, into the question of proximate cause.

{¶ 11} The no-proximate-cause rule is admittedly phrased in terms of proximate cause—an element of a tort claim—and not in terms of immunity. But the judicially created rule improperly imputes to the question of proximate cause a standard of care—extreme or outrageous conduct. As Judge Froelich stated in his dissenting opinion in the court of appeals, "[t]his approach is contrary to traditional notions of proximate cause, which focus on the foreseeability of the consequence, not the wrongfulness of the conduct that produces the result." 2015-Ohio-125, 26 N.E.3d 879, ¶ 34 (Froelich, J., dissenting). The alarmist statement in Justice Kennedy's opinion that abrogation of the no-proximate-cause rule "will have a chilling effect on policing" and "aid criminals in their flight," concurring in judgment opinion at ¶ 64, is completely unfounded and is a misguided attempt to inject policy considerations into a case that is resolved by application of straightforward legal principles of immunity and proximate cause.

{¶ 12} With R.C. 2744.03(A)(6)(b), the General Assembly "expressly removed immunity from employees of a political subdivision for wanton or reckless conduct." *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at ¶ 23. The no-proximate-cause rule, however, shields a police officer from liability as a matter of law unless the officer in these circumstances acts in an extreme or outrageous manner. Extreme or outrageous conduct connotes a higher standard of culpability than reckless or wanton conduct. Conduct that is extreme or outrageous is " 'atrocious, and utterly intolerable in a civilized community,' " that is, it is when " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Whitfield*, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, at ¶ 60, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). Thus, the no-proximate-cause rule effectively and improperly extends immunity to a police officer who acts wantonly or recklessly, but not in an extreme or outrageous manner, even though the officer is not entitled to immunity under R.C. 2744.03(A)(6)(b). Ohio courts lack the authority to confer immunity based on a different standard than the General Assembly has implemented. We must therefore reject the no-proximate-cause rule in favor of the standard set out in ·R.C. 2744.03(A)(6). If the General Assembly wants to expand the limits of the immunity that applies to police officers who pursue fleeing suspects, it may create a new standard via statute, but the courts may not.

**Summary judgment**

{¶ 13} Ordinarily, our conclusion that the express legislative mandate in R.C. 2744.03(A)(6)(b) controls in lieu of the judicially created no-proximate-cause rule

would end the matter, and we would remand for the trial or appellate court to apply the proper immunity standard. But this case calls out for a different course.

{¶ 14} This court reviews a grant of summary judgment de novo—that is, we will consider the evidence as if for the first time—using the standard set out in Civ.R. 56. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29. A court may grant summary judgment only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party. *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

{¶ 15} Because the officers moved for summary judgment not only on the basis of proximate cause but also on the basis of R.C. 2744.03(A)(6)(b) immunity, we must determine whether, based on the evidence in the record, reasonable minds could conclude that any of the officers acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" so as to preclude immunity. In doing so, we bear in mind that while many public employees face the potential for liability under R.C. 2744.03, no other public employee faces the potential danger, violence or unique statutory responsibilities a law-enforcement officer faces. Not only does Ohio law require an officer to arrest and detain a person who is violating the law, R.C. 2935.03(A)(1), it also subjects that officer to potential criminal liability for negligently failing to do so, R.C. 2921.44(A)(2).

{¶ 16} An officer's role in our society creates a unique lens through which to view his or her actions and through which to determine whether those actions may have been malicious, in bad faith, wanton or reckless. We expect law-enforcement officers to protect the public, but that expectation need not mean that an officer must sit idly by while a suspect flees the scene of a crime, particularly when the suspect's flight itself endangers the general public further. The danger of a high-speed chase alone is not enough to present a genuine issue of material fact concerning whether an officer has acted with a malicious purpose, in bad faith or in a wanton or reckless manner. *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 50–51, 772 N.E.2d 129 (9th Dist.2002).

{¶ 17} After reviewing the record in the light most favorable to Argabrite, we conclude that there are no genuine issues of material fact remaining and that the officers are entitled to judgment as a matter of law because there is no evidence that the officers acted with malicious purpose, in bad faith or in a wanton or reckless manner. The officers were therefore entitled to immunity under R.C.

2744.03(A)(6)(b) and to summary judgment. We will address each officer, and the evidence related to his conduct, in turn.

{¶ 18} We begin with Montgomery County Sheriff Sergeant Adkins, who was on patrol when he heard a report of a burglary and a description of the vehicle driven by the suspect. He testified that "it sounded like [Miami Township police] were initiating the pursuit of that vehicle." Anticipating the possible need to clear intersections or to pursue the suspect on foot, Adkins drove in the direction of the ongoing pursuit, but he never personally observed the suspect's vehicle. Based on the evidence, the trial court stated, "Adkins was not involved in the pursuit at all." We agree. Viewing the evidence in the light most favorable to Argabrite, no reasonable juror could conclude that Adkins acted with malicious purpose, in bad faith or in a wanton or reckless manner. Accordingly, he is entitled to immunity under R.C. 2744.03(A)(6)(b).

{¶ 19} We turn next to Montgomery County Sheriff Deputy Ball, who was at a substation on the route of the pursuit when he heard radio traffic describing a vehicle and indicating that Miami Township officers were heading into Washington Township, where he was located. Ball got into his cruiser and turned north on McEwan Road. Shortly thereafter, the suspect passed Ball, heading south. Ball could see the township officers' lights at the intersection of McEwan Road and State Route 725, so he momentarily activated his lights and siren, made a U-turn, and proceeded south behind the suspect. Ball had no intention of taking the lead in the pursuit or of catching up to the suspect; he was simply trying to keep the vehicle in sight. Ball testified that he activated his lights and siren when he approached intersections to alert other motorists and when he needed to pass other vehicles.

{¶ 20} The Miami Township officers gained ground on Ball on Spring Valley Pike, and he radioed for them to pass, pulled to the middle of the road, and slowed his vehicle. He was involved in the pursuit for a distance of two miles. After the township officers passed him, Ball continued driving west with his lights and siren off. He was at a nearby traffic light when he heard that the suspect had crashed.

{¶ 21} As confirmed by our own review of the evidence, the trial court aptly stated that "Ball engaged in the pursuit only at a distance and only at reasonable speeds. He broke off the pursuit in favor of the Miami Township officers well before the accident." Gerald McDevitt and Stephen Ashton, expert witnesses for Argabrite, conceded that Ball stopped pursuing the suspect prior to the accident. But both claimed that Ball violated the sheriff's department's pursuit policy. A violation of departmental policy, however, does not equate to per se recklessness. *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at ¶ 37. Recklessness requires knowledge by the actor that his "conduct will in all probability

result in injury." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, paragraph three of the syllabus. Without evidence of that knowledge, evidence of a policy violation demonstrates negligence, at best. *Id.* at ¶ 92. Here, the record contains no evidence that Ball knew either that he was violating departmental policy or that the violation would in all probability result in injury. Accordingly, we conclude that no reasonable juror could find that Ball acted with malicious purpose, in bad faith or in a wanton or reckless manner. He is therefore entitled to immunity.

{¶ 22} We now turn to the Miami Township police department employees— Deputy Chief DiPietro and Officers Neer and Stites—beginning with DiPietro.

{¶ 23} Sometime before noon on the day of the pursuit, DiPietro heard a radio report of a burglary in Washington Township and that Miami Township Police Sergeant Rex Thompson was looking for the suspect's vehicle. DiPietro knew at that time that at least one other officer was pursuing the suspect. The Miami Township police department's pursuit·policy limits pursuits to instances in which an officer has probable cause to believe that the suspect has committed or is about to commit a violent felony, which is specifically defined to include burglary. Thompson, as the shift supervisor, would have been responsible for control of the pursuit at the outset.

{¶ 24} At 11:54 a.m., DiPietro heard Thompson relay that he was "out of service." DiPietro—being the next highest-ranking officer listening to the radio—took control of the pursuit and asked pursuing officers for their locations and information. He intended to have other officers get ahead of the pursuit and deploy Stop Sticks to stop the suspect's vehicle. But DiPietro was in control of the pursuit for only about three minutes before the suspect crashed at 11:57 a.m. He did not see any of the pursuit. And none of the information he received from the other officers led him to believe that termination of the pursuit was necessary.

{¶ 25} Assuming, for purposes of summary judgment, that DiPietro violated the department's pursuit policy, as Argabrite's experts contend, evidence of a violation of departmental policy does not create a genuine issue of material fact as to whether the violator acted with malicious purpose, in bad faith or in a wanton or recklessness manner without evidence that the violator was aware that his "conduct [would] in all probability result in injury." *O'Toole*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at paragraph three of the syllabus. After taking control of the pursuit, DiPietro requested information from the officers involved and determined that none of that information required terminating the pursuit. The record contains no evidence that DiPietro knew that his actions constituted a violation of departmental policy or, even if so, that the violation would in all probability result in injury. In short, the record contains no evidence to support

a finding that DiPietro acted maliciously, in bad faith or in a wanton or reckless manner. He is, therefore, immune from liability.

{¶ 26} Finally, we turn to Officers Neer and Stites. As with the other officers, Argabrite's experts' opinions with respect to Neer and Stites involve those officers' supposed violations of their departmental pursuit policy in initiating and continuing the pursuit. Ashton, for instance, testified that Neer and Stites violated the Miami Township pursuit policy by continuing the pursuit when the risk to the public outweighed engaging in the pursuit, when the risk to personal safety and the safety of others outweighed the danger if the suspect was not apprehended and when, because they knew the suspect's identity, the risk from the attempt to capture outweighed the risk of the suspect's escape. But again, Ashton's testimony creates at most a question whether the officers violated the departmental policy, not a question whether they acted with malicious purpose, in bad faith or in a wanton or reckless manner.

{¶ 27} Stites first encountered the suspect's vehicle on the day in question when he saw it turn into a residential driveway at an address known to Stites because of a previous incident he had investigated. Stites parked his cruiser on the street and saw Thompson pull into the driveway behind the suspect. Stites was approaching the driveway on foot when the suspect backed his car into Thompson's cruiser and sped off behind the house and through the yard. When Stites returned to his cruiser, Neer passed him, heading in the direction of the suspect. Stites then began to pursue the suspect with "quite a bit of distance" between himself and Neer.

{¶ 28} Neer first saw the suspect driving through the residential yard and realized that the suspect was attempting to flee. He then activated his lights and siren and informed dispatch that he was going to pursue the suspect, whose identity he did not know. At some point early in the pursuit, Stites fell in line behind Neer.

{¶ 29} Neer and Stites described traffic during the pursuit as light and the weather conditions as sunny. Neer testified that throughout the pursuit, the suspect slowed down when proceeding through intersections to avoid an accident. In accordance with the department's pursuit policy, Stites called out street names over the radio so that other officers would know their location and the direction in which they were heading. Neer and Stites used their overhead lights and sirens throughout the pursuit.

{¶ 30} Applying *Fabrey,* 70 Ohio St.3d 351, 639 N.E.2d 31, and *Anderson,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, the court of appeals concluded that "even if there is a factual question as to whether either Neer or Stites violated their pursuit policy, there is no evidence to conclude that either knew that the violation would probably cause someone injury." 2015-Ohio-125, 26

N.E.3d 879, at ¶ 25. We agree. Our review of the record in the light most favorable to Argabrite reveals no evidence from which reasonable minds could conclude that Neer or Stites acted with knowledge that they were either violating departmental policy or that the violations would in all probability result in injury. Without that evidence, then, there is no basis for a finding of wanton or recklessness conduct, and they are immune from liability.

## Conclusion

{¶ 31} We reject the reasoning of *Whitfield*, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, and *Lewis*, 75 Ohio App.3d 453, 599 N.E.2d 814, and the no-proximate-cause rule as contrary to the immunity the General Assembly prescribed in R.C. 2744.03(A)(6)(b). Law-enforcement officers are immune from liability unless they act maliciously, in bad faith or in a wanton or reckless manner. Given officers' statutory duties to arrest and detain individuals violating the law, the burden necessary to deny immunity to those officers is onerous.

{¶ 32} Although we reject the lower courts' application of the no-proximate-cause rule, our review of the evidence and application of R.C. 2744.03(A)(6)(b) demonstrates that the officers are nevertheless entitled to immunity and to summary judgment. Accordingly, although on a different ground, we affirm the court of appeals' judgment affirming the trial court's entry of summary judgment in favor of the officers.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL J., concur.

LANZINGER, J., concurs, with an opinion.

KENNEDY, J., concurs in judgment only, with an opinion.

PFEIFER, J., concurs in part and dissents in part, with an opinion joined by O'NEILL, J.

O'NEILL, J., concurs in part and dissents in part, with an opinion.

---

### LANZINGER, J., concurring.

{¶ 33} I concur in the majority's holding that the officers in this case are entitled to summary judgment. But I would emphasize that this case exemplifies the point that the purpose of the immunity statute is "to protect political subdivisions and their employees from liability for negligent conduct, but not for conduct exceeding negligence." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 47 (Lanzinger, J., concurring in judgment in part and dissenting in part).

{¶ 34} The governmental-immunity statute provides that "the employee is immune from liability unless one of the following applies: * * * [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b). This simply means that employees engaged in a governmental function will not be protected if their actions exceed the standard of negligence. We need not focus precisely on whether the conduct was wanton, reckless, extreme, or outrageous but merely on whether it was more than negligent; to me, negligence alone is the question. The officers involved here were, as the majority explains, at most, negligent. They are protected by governmental immunity.

KENNEDY, J., concurring in judgment only.

{¶ 35} I reject the majority's conclusion that the no-proximate-cause rule is contrary to the sovereign-immunity statute and that Ohio should abandon the rule. The majority blurs the distinction between the affirmative defense of sovereign immunity and the separate and independent tort element of causation. The no-proximate-cause rule is not a standard to be considered when determining whether the affirmative defense of immunity applies. It is, however, a common-law rule that determines when the pursuing police officer is the sole or concurrent proximate cause of an injury sustained by a third party at the hands of a fleeing suspect. Therefore, the no-proximate-cause rule is not contrary to the sovereign-immunity statute, and it should remain a viable rule.

{¶ 36} Because the appellate court correctly held that the pursuit was not extreme or outrageous and that the officers were not the proximate cause of Argabrite's injuries, I would affirm the reasoning and the judgment of the court of appeals. Therefore, I concur in judgment only.

{¶ 37} "It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 247 N.E.2d 732 (1969), and *Feldman v. Howard*, 10 Ohio St.2d 189, 226 N.E.2d 564 (1967).

{¶ 38} Sovereign immunity is an affirmative defense. *Goad v. Cuyahoga Cty. Bd. of Commrs.*, 79 Ohio App.3d 521, 524, 607 N.E.2d 878 (8th Dist.1992). "Where * * * mere negligence is claimed and sovereign immunity is a complete defense to that claim, then the facts surrounding the act of negligence are not material to the case." *Id.* at 524–525.

{¶ 39} Pursuant to R.C. Chapter 2744, the defense of sovereign immunity requires a three-tiered analysis. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 16. The first tier of the analysis provides that a political subdivision is immune for any

injury, death, or loss to a person or property caused by acts that occur in connection with a governmental or proprietary function. R.C. 2744.02(A)(1); *Rankin* at ¶ 17. The second tier of the analysis requires an examination whether any of the five exceptions to immunity set forth in R.C. 2744.02(B) apply. *Rankin* at ¶ 18. Under the third tier of the analysis, if an exception to immunity does apply, then R.C. 2744.03(A)(3) provides that immunity can be reestablished if one of the statutorily listed defenses applies. *Id.* at ¶ 27.

{¶ 40} Conversely, proximate cause is an element of a tort action and is "[a] cause that is legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor." *Black's Law Dictionary* 265 (10th Ed.2014).

> "[W]here an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability." One is thus liable for the natural and probable consequences of his negligent acts.

*Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 216, 222, 141 N.E.2d 156 (1957). An injury may be the result of more than one proximate cause. *Taylor v. Webster*, 12 Ohio St.2d 53, 57, 231 N.E.2d 870 (1967).

{¶ 41} Ohio law also recognizes that "where a legislative enactment imposes upon a person a specific duty for the protection of others, his failure to observe that duty constitutes negligence per se." *Taylor* at 56, citing *Schell v. DuBois*, 94 Ohio St. 93, 113 N.E. 664 (1916), and *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954). "[O]ne who commits the prohibited act [that] result[s] in injury will be deemed to be liable regardless of whether the injury might have been foreseen by a reasonably prudent person." *Eisenhuth* at 372, citing *Butts v. Ward*, 227 Wis. 387, 279 N.W. 6 (1938).

{¶ 42} The "no-proximate-cause" rule was first applied in Ohio by the Ninth District Court of Appeals in *Lewis v. Bland*, 75 Ohio App.3d 453, 599 N.E.2d 814 (9th Dist.1991).[1] It provides first that the reckless driving of a fleeing suspect is

---

1. After *Lewis*, half of Ohio's appellate districts have adopted and applied the rule. *Sutterlin v. Barnard*, 2d Dist. Montgomery No. 13201, 1992 WL 274641 (Oct. 6, 1992); *Sanchez v. Canton*, 5th Dist. Stark No. 1997 CA 00187, 1998 WL 519435 (Jan. 26, 1998); *Heard v. Toledo*, 6th Dist. Lucas No. L–03–1032, 2003-Ohio-5191, 2003 WL 22233790; *Jackson v. Poland Twp.*, 7th Dist. Mahoning

the proximate cause of the injuries to a third party, "notwithstanding recognition of the fact that police pursuit contributed to the pursued's reckless driving." *Id.* at 456, citing *Roll v. Timberman*, 94 N.J.Super. 530, 536, 229 A.2d 281 (1967). The pursuit of the fleeing suspect could be the proximate cause of injures if the circumstances of the chase demonstrated that the officer's conduct was "extreme or outrageous." *Id.*, citing *DeWald v. State*, 719 P.2d 643, 649 (Wyo.1986).

{¶ 43} The majority concludes that the no-proximate-cause rule is "contrary to the express dictates of R.C. 2744.03(A)(6)(b), which prescribes a defense or immunity that political-subdivision employees may assert to establish nonliability in a civil action for damages." Majority opinion at ¶ 1. I disagree.

{¶ 44} As set forth above, sovereign immunity is an affirmative defense that prevents a judgment against a political subdivision or an employee of the political subdivision in some circumstances. The determination of immunity is a "purely legal issue," *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992), citing *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), and it is properly determined pursuant to a motion for summary judgment. *Id.*, citing *Roe v. Hamilton*, 53 Ohio App.3d 120, 560 N.E.2d 238 (1st Dist.1988).

{¶ 45} Moreover, the majority's conclusion that the no-proximate-cause rule is in conflict with the defenses set forth in R.C. 2744.03(A)(6)(b) is erroneous. The no-proximate-cause rule is not applied for purposes of determining immunity. As set forth above, the no-proximate-cause rule is applied in conjunction with the tort element of causation.

{¶ 46} "The question of proximate cause is ordinarily one of fact, but, where there is no conflict in the evidence, such question becomes one of law." *Kehrer v. McKittrick*, 176 Ohio St. 192, 195–196, 198 N.E.2d 669 (1964), citing *Cobb v. Bushey*, 152 Ohio St. 336, 89 N.E.2d 466 (1949), paragraph three of the syllabus. Therefore, if the law-enforcement officers' conduct is not "extreme or outrageous," then, as here, the lack of causation can warrant the granting of a motion for summary judgment without determining immunity.

{¶ 47} Argabrite was injured when the vehicle of a suspect who was fleeing and eluding police struck Argabrite's vehicle in a head-on collision. Argabrite filed a negligence action against the police officers involved in the pursuit.

{¶ 48} The answers of appellees Miami Township police department officers Jim Neer and Gregory Stiles denied that they were the direct and proximate cause of Pamela Argabrite's injuries. They also asserted the affirmative defense of sovereign immunity. Appellees Montgomery County Sheriff Sergeant Daniel

Nos. 96 CA 261, 97 CA 13, and 98 CA 105; *Johnson v. Patterson*, 8th Dist. Cuyahoga No. 66327, 1994 WL 590526, *2 (Oct. 27, 1994).

Adkins and Deputy Tony Ball also filed answers denying that they were the direct and proximate cause of Argabrite's injuries and asserted the affirmative defense of sovereign immunity.

{¶ 49} The officers filed motions for summary judgment. Neer, Stiles, Adkins, and Ball set forth arguments that the accident between Andrew Barnhart and Argabrite was not proximately caused by them and that they were entitled to sovereign immunity.

{¶ 50} In its decision granting the officers' motions for summary judgment, the trial court failed to analyze the issue whether the officers were the proximate cause of the accident apart from the issue whether the officers were entitled to sovereign immunity. Instead, the trial court conflated the issues.

{¶ 51} Despite the trial court's confusion on the application of the no-proximate-cause rule, on appeal of the grant of summary judgment in favor of the officers, the Second District Court of Appeals recognized that the question of immunity is distinct from the question whether the defendants were the proximate cause of Argabrite's injuries.

> [W]e could review and analyze whether the trial court's conclusion that Township officers Neer and Stites were reckless is supported by the record or, if a genuine issue of recklessness is found, whether that behavior was the proximate cause of Barnhart's collision with the Argabrite vehicle. If there is no genuine issue of either recklessness or proximate cause resulting from recklessness, then the officers are entitled to immunity under R.C. 2744.03(A)(6). *But we need not, and do not, engage in that analysis* at this juncture because of our determination that the no-proximate-cause rule of *Whitfield v. Dayton*, requiring extreme or outrageous conduct, is dispositive of this appeal.

(Emphasis added.) 2015-Ohio-125, 26 N.E.3d 879, ¶ 4 (2d Dist.).

{¶ 52} The majority chides that it has not blurred the distinction between immunity and proximate cause but that the no-proximate-cause rule "blurs those distinctions by incorporating concepts related to duty and breach * * * into the question of proximate cause." Majority opinion at ¶ 10. In support of that conclusion, the majority cites the dissenting opinion of Judge Froelich in the court of appeals in this case. He concluded that the no-proximate-cause rule was "contrary to traditional notions of proximate cause, which focus on the foreseeability of the consequence, not on the wrongfulness of the conduct that produces the result." 2015-Ohio-125, 26 N.E.3d 879, ¶ 34 (Froelich, J., dissenting).

{¶ 53} To be sure, the majority is adopting the Froelich approach despite the five other appellate districts across the state that have adopted and applied the no-proximate-cause rule. The majority concludes that "[i]f the General Assembly wants to expand the limits of the immunity that applies to police officers who pursue fleeing suspects, it may create a new standard via statute, but the courts may not." Majority opinion at ¶ 12.

{¶ 54} However, as set forth above, the no-proximate-cause rule is not used to determine whether the affirmative defense of immunity applies but to determine whether given the totality of the circumstances of the pursuit, the pursuit is the sole or concurrent proximate cause of the third party's injuries. Moreover, the majority's conclusion ignores our traditional rules of statutory interpretation, under which we presume that the General Assembly knows the state of the common law when enacting legislation. See Wachendorf v. Shaver, 149 Ohio St. 231, 248, 78 N.E.2d 370 (1948).

{¶ 55} In 1985, the General Assembly enacted R.C. Chapter 2744, which "addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions." Lambert v. Clancy, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 8. The exemptions found in the immunity statute do not abridge or enlarge tort law. The immunity statute never even invades the province of tort law.

{¶ 56} In 1991, the Ninth District Court of Appeals first applied the no-proximate-cause rule in Lewis. 75 Ohio App.3d 453, 599 N.E.2d 814 (9th Dist.1991). Three years later, the General Assembly amended the political-subdivision-immunity statutes. H.B. No. 384, 145 Ohio Laws, Part III, 5719, 5738–5742. Since that time, the legislature has had numerous occasions to amend the sovereign-immunity statute, with the most recent amendment in 2016. See Am.H.B. No. 192, 146 Ohio Laws, Part II, 2733, 2747–2751; Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, 3984–3994; Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 909, 1145–1154; H.B. No. 205, 148 Ohio Laws, Part I, 1344–1349; S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9636–9641; Sub.S.B. No. 24, 149 Ohio Laws, Part I, 662–674; Sub.S.B. No. 108, 149 Ohio Laws, Part I, 382, 457–469; Am.Sub.S.B. No. 106, 149 Ohio Laws, Part II, 3500, 3501–3517; Sub.S.B. No. 222, 150 Ohio Laws, Part V, 8230, 8257–8262; Am.Sub.H.B. No. 162, 151 Ohio Laws, Part IV, 7744, 7765–7770; 2014 Sub.S.B. No. 172; 2016 Sub.H.B. No. 158. Despite both the holding in Lewis and the fact that half the appellate districts across Ohio have adopted and applied the no-proximate-cause rule, none of the amendments to the political-subdivision-immunity statute contain any language that restricts the common-law development of the rule or otherwise "clearly supports" abrogating the rule. If the no-proximate-cause rule truly blurred the distinction or limitations of the immunity statute as the majority claims, then

surely the General Assembly would have acted. Because the General Assembly has not taken any such action, we can only presume that the General Assembly does not believe that the no-proximate-cause rule encroaches upon its political-subdivision-immunity statute. The General Assembly's inaction suggests that the majority's decision rejecting the rule as encroaching on the province of the immunity statute is meritless.

{¶ 57} Ohio law requires that police officers apprehend suspects. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 32; R.C. 2935.03(A)(1) (peace officers "shall arrest and detain, until a warrant can be obtained, a person found violating * * * a law of this state"); R.C. 2921.44(A)(2) and (F) (a law-enforcement officer's negligent failure to prevent or stop the commission of an offense or to apprehend an offender is a second-degree misdemeanor). More-over, Ohio law implicitly recognizes that in the fulfillment of their duties, police officers may have cause to pursue a suspect. *See State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, 1 N.E.3d 374, ¶ 5; *see also* R.C. 2921.331(A) (failure to comply with any lawful order of a police officer is a crime); R.C. 2921.331(C)(4) and (5)(A) (willfully fleeing or eluding a police office after the commission of a felony in a vehicle is a felony of the fourth degree, and if the offender causes serious physical harm or "a substantial risk of serious physical harm to persons or property," a violation of R.C. 2921.331(B) is a felony of the third degree).

{¶ 58} The no-proximate-cause rule recognizes the necessary balance between a police officer's inherently dangerous obligation to pursue and apprehend a fleeing suspect and whether the pursuit becomes the sole or concurrent cause of a third party's injuries. This is particularly true in this case when the fleeing suspect's actions were negligent per se and his actions proximately caused the injuries of the third party.

{¶ 59} I agree with the standard of review set forth in the majority opinion and the majority's recitation of facts. Based on the totality of the facts outlined in the majority opinion, the pursuit of the burglary suspect was not the proximate cause of Argabrite's injuries. Therefore, the fleeing suspect was the sole proximate cause of Argabrite's injuries.

{¶ 60} "[P]olice officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving * * *." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Just as "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties," *Terry v. Ohio*, 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it is equally unreasonable to inhibit police officers from performing their sworn duty to uphold the law, *State v. Stover*, 3d Dist. Putnam No. 12–95–1, 1995 WL 564100, *3 (Sept. 22, 1995).

{¶ 61} "Police [officers] cannot be made insurers of the conduct of the culprits they chase." *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589, 591 (Ky.App. 1952). Although the pursued may drive recklessly because an officer has engaged in a pursuit, the officer is not obliged to allow the pursued to escape. *Miami v. Horne*, 198 So.2d 10, 13 (Fla.1967). Without the no-proximate-cause rule, doors would open " 'for every desperado to seek sanctuary in the congested confines of our municipalities.' " *DeWald*, 719 P.2d at 650, quoting *West Virginia ex rel. Poulos v. Fid. & Cas. Co. of New York*, 263 F.Supp. 88, 91 (S.D.W.Va. 1967).

{¶ 62} The United States Supreme Court has recognized that imposing a rule requiring law-enforcement officers to allow fleeing suspects to get away would erode the deterrent effect of policing on criminal behavior:

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so *recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.

(Emphasis sic.) *Scott v. Harris*, 550 U.S. 372, 385, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

{¶ 63} But today's majority opinion, in my view, does just that. The majority writes that "[w]e expect law-enforcement officers to protect the public, but that expectation need not mean that an officer must sit idly by while a suspect flees the scene of a crime, particularly when the suspect's flight itself endangers the general public further." Majority opinion at ¶ 16. The immunity standards are "rigorous standards that will *in most circumstances* be difficult to establish, especially with respect to a law-enforcement officer carrying out the statutory duty to arrest and detain a person violating the law." (Emphasis added). *Id.* at ¶ 8. Perhaps law-enforcement officers should take comfort in the fact that, according to the majority, "in most circumstances" sovereign immunity will apply. However amicus curiae Ohio Prosecuting Attorneys Association has a different view: "Because police pursuits are indeed dangerous * * * plaintiffs would be able to plausibly argue that police pursuits of fleeing suspects are *per se* reckless." Which of these two views of the "recklessness" standard of the immunity statute is accurate will be determined in the coming years as law-enforcement officers are sued for injuries sustained at the hands of a fleeing suspect.

{¶ 64} Today's majority ruling will have a chilling effect on policing and will aid criminals in their flight to avoid apprehension. The majority dismisses this statement as "alarmist * * * [and] completely unfounded." Majority opinion at ¶ 11. While it is hard to prove a negative—that is, that pursuits will not occur as a result of today's majority opinion—the statement is scarcely "alarmist."

{¶ 65} Newton's third law of motion states that "[f]or every force there is an equal and opposite force or reaction." *Webster's Third New International Dictionary* 1280 (2002). The fact that the majority's action comes by way of the pen does not diminish the natural and predictable reaction to that force.

{¶ 66} And, when a majority of this court takes action, as it does today, to abrogate the common-law no-proximate-cause rule, the reasonable and logical reaction by Ohio law-enforcement officers will be to weigh the possibility of personal liability for an injury to a third party caused by the misconduct of a fleeing suspect before they engage in a pursuit. When decision-making happens in a heartbeat, as it does in the everyday professional life of law-enforcement officers, that reaction—weighing personal liability before taking action—will have a chilling effect on policing.

{¶ 67} The conclusion that abrogating the no-proximate-cause rule will have a chilling effect on policing is also shared by amicus curiae Ohio Prosecuting Attorneys Association, which states that rejecting the no-proximate-cause rule will result in more lawsuits against police officers. The fear of liability will make law-enforcement officers think twice before engaging in a pursuit and will embolden criminals. *S. Cent. Regional Med. Ctr. v. Pickering,* 749 So.2d 95, 101 (Miss.1999) (imposition of liability for certain conduct deters others from such conduct).

{¶ 68} The deterrent effect that the fear of liability will have on law-enforcement officers has been contemplated by a few of our sister supreme courts. The Texas Supreme Court determined that an important factor in the competing interests involved in determining the liability of police for injuries incurred in a high-speed pursuit was " 'the danger that the threat of such liability would deter [an officer's] willingness to execute his office with the decisiveness and the judgment required by the public good.' " *Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994), quoting *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

{¶ 69} Imposing liability on an officer for the actions of the pursued was also a matter of grave concern to the Supreme Court of Wyoming. That court wrote that a police officer "should be responsible only for the careful operation of his own car; * * * he should not be liable for the unpredictable actions of the driver being pursued *for that would make him an insurer of the wrongful acts of a lawbreaker.*" (Emphasis added.) *DeWald,* 719 P.2d at 649.

{¶ 70} "Alarmist." I think not.

{¶ 71} Moreover, the majority's view that my position "is a misguided attempt to inject policy considerations into a case that is resolved by application of straightforward legal principles of immunity and proximate cause," majority opinion at ¶ 11, is balderdash. Steeped in legal principles and precedent is the notion that absent an express abrogation by the General Assembly, the common law remains viable. As set forth above, the no-proximate-cause rule is a common-law rule that has not been expressly abrogated by the General Assembly in any of the numerous amendments of the sovereign-immunity statute after the first Ohio court applied the no-proximate-cause rule. The mere fact that I also believe that the no-proximate-cause rule is grounded in sound policy—that we should not undermine or deter law-enforcement officers from faithfully honoring their duty and obligation to arrest and apprehend suspects and criminals alike—does not undermine that argument.

{¶ 72} Law-enforcement officers throughout Ohio should carefully read those cases from around the United States in which officers are found reckless in their pursuit of fleeing suspects and, before activating the lights and sirens of a public-safety vehicle to apprehend suspected impaired drivers, murderers, rapists, kidnappers, child abductors, or armed robbers and the like, consider the fate of their families and their financial well-being. Those individuals who have already chosen to violate the sanctity of society's laws are more likely to willfully attempt to flee and elude police to avoid apprehension and will do so at any cost. After all, the fleeing suspect has nothing more to lose and freedom to gain by driving recklessly at high rates of speed swerving in and out of traffic, especially now.

{¶ 73} Because the common-law no-proximate-cause rule is used to determine the tort element of causation and is not a defense to determine immunity, I dissent. Ohio law places an affirmative duty on police officers to apprehend suspects, and the no-proximate-cause rule should remain viable, particularly when the General Assembly has remained silent. Because the appellate court correctly held that the pursuit was not extreme or outrageous and that the officers were not the proximate cause of Argabrite's injuries, I would affirm the reasoning and the judgment of the court of appeals. Therefore, I concur in judgment only.

---

PFEIFER, J., concurring in part and dissenting in part.

{¶ 74} People in Ohio die because of high-speed police chases. Sometimes, as in this case, the person being chased dies. Sometimes, it is a bystander. In this case, a bystander was not killed, but she was seriously injured. It did not have to happen.

{¶ 75} One of the police officers involved in the pursuit was familiar with Andrew Barnhart. Officers suspected Barnhart was involved in a burglary prior to the day of the pursuit; they had identified that he owned a white Caprice,

which was described as the car used in a burglary the day of the pursuit; and they knew where his grandmother lived. They knew enough about him that chasing him was not the only way to apprehend him. As it turns out, it certainly was not the safest way.

{¶ 76} Both the trial and the appellate courts in this case applied a proximate-cause standard espoused in *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532 (2d Dist.), *overruled in part on other grounds, Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, that this court rightly repudiates because it subverts the immunity standard set forth in R.C. 2744.03(A)(6)(b). I concur in that portion of the majority opinion.

{¶ 77} Peace officers have a duty to enforce criminal laws and apprehend offenders. *State v. White,* 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 32, citing R.C. 2935.03(A)(1) and 2921.44(A)(2). This duty does not exist in a vacuum: it exists in tandem with the officers' duty to avoid causing harm wantonly or recklessly.

{¶ 78} After reviewing the record most strongly in favor of Argabrite, I agree with the majority opinion that there are no genuine issues of material fact with respect to Sergeant Adkins. As the trial court noted, even the plaintiff's experts agreed that he "played no active role in the pursuit." Accordingly, he should be entitled to judgment as a matter of law because no facts suggest that he acted recklessly or wantonly.

{¶ 79} Even so, this determination is unusual. Extraordinary circumstances (for instance, no active role in the pursuit) must be present for this court to reach a decision on summary judgment when the trial court applied the wrong standard. Those extraordinary circumstances are not present with respect to the other potentially liable officers, especially in light of the possible violation of departmental pursuit policies. It is axiomatic that whether the officers knew about their department's pursuit policy and whether they adhered to it are jury questions.

{¶ 80} Moreover, the trial court did not apply *Anderson,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, which in concert with R.C. 2744.03(A)(6)(b) sets forth the legal standard that should be applied in this case. We are loathe to substitute our judgment for that of lower courts that have been guided by a correct legal standard, and we should positively recoil at inserting our judgment when a lower court has not had the opportunity to apply the proper legal standard.

{¶ 81} Based on my review of the record, there are genuine issues of material fact as to the other defendants. It is not possible to determine categorically that the police officers were not the proximate cause of the injuries that Argabrite suffered. Proving proximate cause would likely be difficult, but Argabrite should have that opportunity. I would remand the case to the trial court with instruc-

tions for it to apply *Anderson* and R.C. 2744.03(A)(6)(b). Accordingly, I dissent with respect to the defendants (other than Officer Adkins) who are being granted summary judgment.

{¶ 82} Even when police officers are immune from liability, bystanders are not immune from injury. More consideration should be given to the foreseeable consequences of police pursuit. Unless pursuit is necessary for the immediate protection of the public, it should be curtailed so that it does not create immediate risk.

O'NEILL, J., concurs in the foregoing opinion.

_____

**O'NEILL, J., concurring in part and dissenting in part.**

{¶ 83} I join Justice Pfeifer's thoughtful and well-written concurring and dissenting opinion. I agree with the majority's statement of the law in this case. By enacting R.C. 2744.03(A)(6)(b), the General Assembly has established that law-enforcement officers are immune from liability unless they act maliciously, in bad faith, or in a wanton or reckless manner. I likewise agree that "[g]iven officers' statutory duties to arrest and detain individuals violating the law, the burden necessary to deny immunity to those officers is onerous." Majority opinion at ¶ 31. This is as it should be.

{¶ 84} I disagree, however, with the majority's decision to weigh the evidence and grant summary judgment in favor of law enforcement. Both the trial court and the appellate court used the wrong legal standard when granting summary judgment to the law-enforcement officers here. Pamela Argabrite deserves to have her motions and pleadings reviewed by the trial court using the correct legal standard. Joining Justice Pfeifer, I would remand the case to the trial court with instructions for it to apply *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, and R.C. 2744.03(A)(6)(b), and I dissent with respect to the officers (other than Officer Adkins) who are being granted summary judgment.

_____

Dyer, Garofalo, Mann & Schultz, L.P.A., and Kenneth J. Ignozzi, for appellant.

Surdyk, Dowd & Turner Co., L.P.A., Joshua R. Schierloh, and Edward J. Dowd, for appellees Jim Neer and Gregory Stites.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura G. Mariani and Lynne R. Nothstine, Assistant Prosecuting Attorneys, for appellees Anthony Ball and Daniel Adkins.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Kurt M. Irey, for appellee John DiPietro.

Valore & Gordillo, L.L.P., and Gregory A. Gordillo, urging reversal for amicus curiae Ohio Employment Lawyers Association.

Ginger S. Bock Law Office, Inc., and Ginger S. Bock; Landskroner, Grieco, Merriman, L.L.C., and Drew Legando; and Traska Law Firm, L.L.C., and Peter D. Traska, urging reversal for amicus curiae Ohio Association for Justice.

Joseph Deters, Hamilton County Prosecuting Attorney, and Christian J. Schaefer, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.