HORTON, J., dissenting.
 

 {¶ 33} Although R.C. 2744.03 places an "onerous" burden on a plaintiff to demonstrate an exception to statutory immunity for law enforcement officers, Timothy has, at a minimum, demonstrated that genuine issues of material fact remain as to whether Sergeant Baker's conduct was reckless.
 
 Argabrite v. Neer
 
 ,
 
 149 Ohio St.3d 349
 
 ,
 
 2016-Ohio-8374
 
 ,
 
 75 N.E.3d 161
 
 , ¶ 31. For that reason, a jury should decide whether Sergeant Baker's conduct was reckless.
 

 {¶ 34} As the majority points out, evidence of an officer's violation of departmental policy, standing alone, does not
 demonstrate a genuine issue of material fact as to the officer's recklessness.
 
 Argabrite
 
 at ¶ 21, citing
 
 Anderson v. Massillon
 
 ,
 
 134 Ohio St.3d 380
 
 ,
 
 2012-Ohio-5711
 
 ,
 
 983 N.E.2d 266
 
 , ¶ 37. Rather, there must be some showing that the officer was aware that his conduct would " 'in all probability result in injury.' "
 
 Argabrite
 
 at ¶ 25, quoting
 
 O'Toole v. Denihan
 
 ,
 
 118 Ohio St.3d 374
 
 ,
 
 2008-Ohio-2574
 
 ,
 
 889 N.E.2d 505
 
 , paragraph three of the syllabus. In that case, there was "no evidence from which reasonable minds could conclude that [the officers] acted with knowledge that they were either violating departmental policy or that the violations would in all probability result in injury."
 
 Argabrite
 
 at ¶ 30.
 

 {¶ 35} In contrast with
 
 Argabrite
 
 , there is ample evidence in this case from which a reasonable jury could conclude that Sergeant Baker acted with knowledge that he was violating the Columbus Police Department's policy. Sergeant Baker was well aware of the departmental policies to summon personnel from the Crisis Intervention Team ("CIT") or SWAT negotiators when responding to a call involving a suicidal person. (Baker Dep. at 18-19.) Nevertheless, he made the conscious decision to not follow either policy and instead confront Julie alone. Sergeant Baker's professed rationale for doing so was his belief, based on the dispatcher's report, that she had injured herself and "needed medical attention." (Baker Dep. at 56.) He also stated this rationale in his affidavit:
 

 I determined it was necessary to make contact with the woman inside to assess her situation and to address how best to resolve the matter, and to provide medical attention. This determination was based on the information I had learned over the preceding ten minutes and was consistent with my training (as an officer and a supervisor), experience and standard operating procedures. I knew there had been a cutting out of a possible suicide attempt, the report of an actual injury and the presence of weapons (a cutting instrument and possibly a gun). It was, therefore, my understanding and belief that the woman had cut herself and needed immediate medical attention, as well as evaluation of other issues she was experiencing.
 

 (Baker Aff. at ¶ 11.)
 

 {¶ 36} Sergeant Baker's deposition testimony describing the moments before the shots were fired does not support his proffered rationale. According to his testimony, he knocked on the door. Julie asked who it was and he replied, "It's the Columbus Police." (Baker Dep. at 39.) Julie responded "go away." (Baker Dep. at 40.) Using his "command voice," Sergeant Baker replied: "Open the door, ma'am." (Baker Dep. at 43.) Julie said "No. Go away."
 

 Id.
 

 Sergeant Baker said: "Ma'am, we're not leaving. Open the door."
 

 Id.
 

 She did so, and Sergeant Baker, with his gun trained on her, ordered Julie to step outside. (Baker Dep. at 45.) She responded by saying "fuck no."
 

 Id.
 

 It was then that Sergeant Baker noticed the gun that Julie held in her left hand. (Baker Dep. at 46.)
 

 {¶ 37} Absent from Sergeant Baker's own account of this interaction is any attempt to inquire into Julie's condition or "assess the situation" after making contact with her, as he claims was his intention in the affidavit. He did not ask Julie if she was injured or if she was okay. He did not ask if she needed medical attention. Instead, after making contact with her, Sergeant Baker demanded that she open the door, and, with his gun trained on her, demanded that she exit the house. Between the time that Sergeant Baker first spoke to Julie and her death, he did not engage in a course of conduct that was consistent with the intentions stated in the affidavit. "It is well established that where a moving party submits conflicting affidavit statements in support of the motion for
 summary judgment, which are inconsistent with his prior deposition testimony, summary judgment is improper because the inconsistencies raise a credibility question that creates a genuine issue of material fact for the jury to resolve."
 
 Concrete Coring Co. v. Gantzer
 
 , 1st Dist. No. C-020119,
 
 2002-Ohio-6655
 
 ,
 
 2002 WL 31729067
 
 , ¶ 18. That inconsistency alone would create a genuine issue of material fact requiring a jury to evaluate Sergeant Baker's credibility. The need for a jury trial is underscored by the fact that these inconsistencies concern his proffered reason for not following CPD policy of calling in SWAT negotiators or CIT personnel when dealing with a suicidal person.
 

 {¶ 38} Furthermore, the fact that Sergeant Baker was about to face a suicidal person with a gun, yet chose to not follow CPD policy is sufficient to create a genuine issue of material fact as to whether he knew that his actions "would in all probability result in injury."
 
 Argabrite
 
 at ¶ 30. But overshadowing the question of recklessness is his admitted knowledge that, in addition to facing a suicidal person, Sergeant Baker knew that Julie had threatened "suicide by cop." (Baker Dep. at 57.) "To commit 'suicide by cop' is to act in a way that would require law enforcement officers to respond with lethal force."
 
 United States v. List
 
 ,
 
 200 Fed.Appx. 535
 
 , 544 (6th Cir.2006), fn. 2. After deciding to forgo procedure and making no attempt at dialog or de-escalation, Sergeant Baker confronted a suicidal person who was likely to act in a way that would require him to respond with lethal force with his weapon drawn. I would think that responding to any call that informs the officer that the person has mentioned "suicide by cop" would require some apparent application of training that deals with a subject with potential mental health challenges, i.e., whether conversation, negotiation, or other. Any sort of application seems absent. Officer Baker's handling of the situation appears to demonstrate that he was completely tone-deaf to the mental challenges involved in this situation. Consequently, a reasonable jury could conclude that Sergeant Baker knew that this conduct would probably result in injury, and was therefore reckless. For the foregoing reasons, I respectfully dissent.