NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0217n.06

No. 21-3906

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MATTHEW BURGHARDT, et al., | ) | **FILED**<br>Jun 01, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| EZEKIEL RYAN, et al., | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: ROGERS, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. Two men tried to steal a log splitter in Lakemore, Ohio, and then fled in a dark van. Minutes later, police officers cornered a dark van containing Christian Beard and Matthew Burghardt. When Beard tried to drive away, the officers shot into the van and injured both men. Beard and Burghardt sued the officers, asserting claims of excessive force and unconstitutional seizure, as well as state-law claims. The district court granted the officers' motions for summary judgment based on qualified immunity. We affirm.

I.

"We take the district court's view of the facts in the light most favorable to" Beard and Burghardt, "except that we reject [their] allegations to the extent they are clearly contradicted by a videotape capturing the events in question." *Hayden v. Green*, 640 F.3d 150, 152 (6th Cir. 2011) (internal citation omitted).

At around 4:30 in the morning on February 13, 2018, Officer Ezekiel Ryan received a call from dispatch reporting an attempted theft at a Tractor Supply store. Employees said that two men had tried to steal a log splitter and then had driven away in a dark van with no license plate.

Ryan searched the area and soon found a dark van idling in a crescent-shaped driveway behind two parked cars. The van had a license plate, but otherwise matched the employees' description. Ryan turned on his police lights and pulled up behind the van to block it in the driveway. The van's engine and lights then shut off. Ryan stepped out and saw Beard and Burghardt inside the van, reclined in their seats with their eyes closed. Because their engine had been running moments earlier, Ryan thought the two men were pretending to sleep.

Officer Kristofer London and Sergeant Eric East arrived minutes later. London determined that the van's license plate belonged to a different vehicle. The officers ordered Beard and Burghardt to open the van, but neither man responded. East gave the pair a final warning, and then began to use a slim-jim to unlock the driver's-side door.

Beard then sat up in the driver's seat. East told him again to open the door, and not to start the vehicle. Beard instead turned to look through the rear window, looked back at East, and turned on the engine.

East backed away and told London and Ryan, "Don't shoot him. Don't shoot him." The next instant, the van's wheels squealed as it tore backward toward Ryan's parked police cruiser. (Beard claims that he was trying to pull around the cruiser in reverse.) East ran toward his own police car, crossing the short lawn between the van and the road, while London and Ryan trained their guns on the vehicle. As the van sped backward, its front turned to face Ryan and kept turning toward East. Ryan moved to his left, out of the van's path. The back of the van then hit Ryan's cruiser, and Ryan and London opened fire.

Their bullets entered the side of the van and struck both suspects, including one bullet that hit Burghardt in the head. Although the officers performed life-saving measures, Burghardt's injuries caused him permanent blindness and brain damage.

Beard and Burghardt thereafter sued Ryan and London under 42 U.S.C. § 1983, asserting claims of excessive force and unconstitutional seizure, along with state-law claims for willful, wanton, and reckless conduct, and assault and battery. The district court granted the officers' motions for summary judgment, dismissing the federal claims on grounds of qualified immunity, and dismissing the state-law claims on the grounds of Ohio statutory immunity. This appeal followed.

II.

Beard and Burghardt challenge the district court's grant of summary judgment based on qualified immunity. We review that decision de novo. *Bey v. Falk*, 946 F.3d 304, 311 (6th Cir. 2019).

To overcome qualified immunity, a plaintiff must show two things: first, that the officer violated a constitutional right of the plaintiff; and second, that the right was "clearly established" when the officer acted. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). We begin with that second question here. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). To make that showing, a plaintiff must identify a case whose facts and holding would make "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

Here, Beard and Burghardt cite various cases in which we held that officers who shot at a fleeing vehicle had used unreasonable force. *See Smith v. Cupp*, 430 F.3d 766, 773–775 (6th Cir. 2005); *Godawa v. Byrd*, 798 F.3d 457, 466 (6th Cir. 2015); *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017). But in those cases the suspect's car had already passed by the officers when they opened fire. *See id.* Here, as the back end of the van struck Ryan's cruiser, the officers had good reason to think that the van would pull forward again. And if it did so the van could have struck any of the officers—including East, who stood in the van's plausible escape route. That makes this case different from *Godawa*, for example, where the car physically could not have struck the officer when he fired. 798 F.3d at 462. And that makes this case more like *Williams v. City of Grosse Pointe Park*, where the officers fired when the vehicle still could have struck them. 496 F.3d 482, 487 (6th Cir. 2007). That the van had already passed by the officers when they fired is not dispositive here; what matters is that it remained a threat to strike any of them when they opened fire. *Id.* Thus, at the time of this shooting, no case from this court or the Supreme Court made clear that, under these circumstances, the officers could not open fire. Qualified immunity therefore protects Ryan and London as to the federal claims.

Beard and Burghardt also argue that Ryan and London acted recklessly and thus should not receive Ohio statutory immunity as to the state-law claims. Officers are entitled to that immunity from Ohio state-law claims unless they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code Ann. § 2744.03(A)(6)(b). As relevant here, an officer acts in a reckless manner when he consciously disregards or is indifferent towards "a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Argabrite v. Neer*, 149 Ohio St. 3d 349, 351 (2016). This

4

definition creates "rigorous standards" that are "difficult to establish," "especially" when an officer attempts to "arrest and detain a person violating the law." *Id.*

Beard and Burghardt fail to meet this high standard here. At the time of the shooting, London and Ryan could have reasonably believed that the van would pull forward and strike one of them or Sergeant East. True, East had told Ryan and London not to shoot; but he did so before the van even moved, and the situation thereafter changed. Nor does Beard and Burghardt's nonviolence to that point, or the van's reverse direction, change the outcome. Their nonviolent crime did not affect their apparent desperation to escape, and the threat of the van pulling forward was plausible until the officers opened fire. Neither officer engaged in "substantially greater than negligent conduct" under those circumstances. *Neer*, 149 Ohio St. 3d at 351.

The district court's judgment is affirmed.