SEAN C. GALLAGHER, J.:
*340 {¶ 1} Defendants-appellants village of Newburgh Heights, Patrolman Bob Hoover ("Patrolman Hoover"), and Chief Gabriel Barone ("Chief Barone") (collectively "the Newburgh Heights defendants") appeal the decision of the trial court that denied their motion for summary judgment, which claimed statutory immunity. Upon review, we reverse the decision of the trial court and remand the case.
Background
{¶ 2} On March 5, 2011, plaintiffs-appellees Wade Huffman ("Huffman") and Alan Bowles ("Bowles") were pedestrians who were struck by a vehicle driven by Russell H. Roupe, Jr. ("Roupe"). The accident occurred during a high-speed police chase.
{¶ 3} On the evening of the accident, Patrolman Hoover of the Newburgh Heights Police Department was on duty in a marked police vehicle. Shortly after 6:00 p.m., he received a radio broadcast from the Newburgh Heights 911 emergency dispatch regarding a possible child abduction. The caller could be heard in the background screaming in a hysterical manner. The 911 dispatcher relayed that the driver of a white truck heading from Gamma Avenue toward Fleet Avenue had a child that he was not supposed to have in the vehicle.
{¶ 4} Patrolman Hoover observed a white SUV enter E. 49th Street from Gamma Avenue at a high rate of speed. Patrolman Hoover informed the dispatcher that he was attempting to stop the suspect vehicle. According to his affidavit, he immediately activated his overhead flashing lights and police siren to signal the suspect vehicle to stop. The suspect vehicle did not stop but continued north on E. 49th Street to Fleet Avenue.
{¶ 5} Patrolman Hoover followed behind the suspect vehicle and attempted to get the driver to stop. The suspect vehicle, which was driven by defendant Roupe, stopped momentarily at a red light, but when the light turned green, the suspect vehicle accelerated and pulled to the left around other vehicles. Patrolman Hoover stated in his deposition that he was not able to see into the suspect vehicle, which had tinted windows.
{¶ 6} Patrolman Hoover followed and asked the dispatcher to confirm if there was a child in the suspect vehicle. The dispatcher indicated that the female caller was screaming "he got my niece, he's got my niece" and had apparently hung up. The dispatcher indicated she was trying to get a callback number and was going to notify Cleveland.
{¶ 7} Patrolman Hoover indicated in his affidavit that the suspect vehicle continued to accelerate to speeds approaching 70 m.p.h. The posted speed limit was 25 m.p.h. Patrolman Hoover continued to follow; however, he stated in his affidavit that he began slowing his vehicle so the suspect might also reduce his speed. The suspect continued at a high rate of speed and attempted to turn right onto E. 65th Street, where he lost control. The suspect vehicle struck an RTA bus shelter on the sidewalk. Plaintiffs Huffman and Bowles *341 were pedestrians who were injured in the accident.
{¶ 8} As the pursuit was occurring, Patrolman Hoover informed the dispatcher: "He's being erratic[,] we're at speeds of 70. Do you want to call it or is there a child?" He then informed the dispatcher that the suspect vehicle had "just wrecked." Sirens could be heard on the 911 emergency dispatch recording during the high-speed pursuit and as the crash was being reported.
{¶ 9} The entire pursuit lasted one to two minutes. Patrolman Hoover stated in his affidavit that at the time he was engaged in the pursuit, he believed that the driver of the suspect vehicle had been involved in a child abduction.
{¶ 10} After the crash, the suspect driver fled on foot. Patrolman Hoover apprehended the suspect and placed him under arrest. No child was found inside the suspect vehicle. Chief Barone was not on duty at the time of the police pursuit.
{¶ 11} The plaintiffs originally filed a complaint on March 4, 2013, against the Newburgh Heights defendants and Roupe. The case was removed to the United States District Court for the Northern District of Ohio, wherein the federal constitutional claim was disposed and the court dismissed the remaining state law claims without prejudice. Huffman v. Newburgh Hts. , 120 F.Supp.3d 691 (N.D.Ohio 2015). On June 27, 2015, the plaintiffs refiled their complaint with the state law claims in the Cuyahoga County Court of Common Pleas.[1]
{¶ 12} The plaintiffs allege that the defendants negligently, recklessly, willfully, and/or wantonly caused injury to them. The Newburgh Heights defendants filed a motion for summary judgment claiming statutory immunity under R.C. Chapter 2744. The trial court denied the motion upon finding genuine issues of material fact to exist. This appeal followed.
{¶ 13} We note that the only matter properly before us on review is whether the Newburgh Heights defendants are entitled to statutory immunity.[2] We recognize appellees have indicated that they will dismiss their nuisance claim in Count V, their negligent entrustment claim in Count VII, and their constitutional challenge to Chapter 2744 in Count XI.
Law and Analysis
{¶ 14} Appellants raise two assignments of error that challenge the trial court's decision to deny the motion for summary judgment (1) as to the village of Newburgh Heights, and (2) as to Patrolman Hoover and Chief Barone individually. We review the grant of summary judgment on the issue of immunity de novo using the standard set forth in Civ.R. 56. Argabrite v. Neer , 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." Id. , citing *342 M.H. v. Cuyahoga Falls , 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.
{¶ 15} R.C. 2744.02(B)(1)(a) affords a political subdivision with a full defense to tort liability for a police officer's operation of a vehicle while responding to an emergency call provided the operation of the vehicle did not constitute "willful or wanton misconduct [.]" (Emphasis added.) An "[e]mergency call" means "a call to duty, including * * * communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." R.C. 2744.01(A).
{¶ 16} R.C. 2744.02(B)(1)(a) is different from R.C. 2744.03(A)(6), which sets forth the immunity of political-subdivision employees and includes an exception for an employee's acts or omissions that were "with malicious purpose, in bad faith, or in a wanton or reckless manner. " Emphasis added. Unlike R.C. 2744.03(A)(6), R.C. 2744.02(B)(1)(a), does not include the term "reckless," and the Supreme Court of Ohio has made clear that the terms "willful," "wanton," and "reckless" are not interchangeable but, rather, describe different and distinct degrees of care. Anderson v. Massillon , 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 31. As stated in Anderson ,
When the General Assembly used the terms "willful" or "wanton" in R.C. 2744.02(B)(1)(b) to deny a full defense to liability for a political subdivision and the terms wanton or reckless in R.C. 2744.03(A)(6)(b) to remove the immunity of an employee of the political subdivision, it intended different degrees of care.
Anderson at ¶ 36 (construing R.C. 2744.02(B)(1)(b), which applies to the operation of a fire department vehicle).
{¶ 17} Thus, for purposes of determining whether the village of Newburgh Heights is entitled to immunity, we must consider whether Patrolman Hoover engaged in willful or wanton misconduct while responding to the 911 emergency call. Reasonable minds could only conclude from the evidence that Patrolman Hoover was called to duty upon receiving the 911 emergency dispatch reporting the suspect vehicle was involved with a child abduction and that he was responding to an emergency call.
{¶ 18} The terms "willful misconduct" and "wanton misconduct" have been described as follows:
Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. ( Tighe v. Diamond , 149 Ohio St. 520, 80 N.E.2d 122 (1948), approved and followed.)
Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. ( Hawkins v. Ivy , 50 Ohio St.2d 114, 363 N.E.2d 367 (1977), approved and followed.)
Anderson at paragraphs two and three of the syllabus.
{¶ 19} In this case, there is no evidence that Patrolman Hoover intentionally deviated from a clear legal duty or acted with an intent or purpose so as to constitute willful misconduct. Also, there is no evidence that he failed to exercise any care so as to constitute wanton misconduct.
{¶ 20} The record reflects that Patrolman Hoover was responding to an emergency 911 dispatch concerning a potential child abduction. Although the high-speed *343 chase occurred on trafficked roads around 6:00 p.m., Patrolman Hoover indicated that it was still light. He also indicated that he activated his lights and sirens. Although appellees point to contradictions in his deposition relating to whether the lights and sirens were on intermittently or throughout the high-speed pursuit, on the 911 dispatch recording sirens could be heard during the high-speed pursuit and reported crash. Further, Patrolman Hoover indicated he was attempting to stop the vehicle and attempted to get it to slow down. The suspect vehicle stopped at a red light momentarily, and at one point Patrolman Hoover slowed his vehicle, but the suspect continued at a high rate of speed. Patrolman Hoover reported his location to dispatch as the pursuit transpired, and he sought confirmation regarding whether a child was in the vehicle. The pursuit was short, lasting only one to two minutes. Although appellees also point to a lack of pursuit training policies and question Patrolman Hoover's training and judgment, we are unable to find any willful or wanton misconduct in this matter.
{¶ 21} Upon our review, we find that the village of Newburgh Heights is entitled to immunity under R.C. 2744.02(B)(1)(a). Next, we address whether Patrolman Hoover and Chief Barone are entitled to immunity under R.C. 2744.03(A)(6)(b).
{¶ 22} R.C. 2744.03(A) prescribes the defenses or immunities that a political-subdivision employee may assert to establish nonliability in a civil action for damages allegedly caused by an act or omission in connection with a governmental or proprietary function. Argabrite , 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, at ¶ 7. As applicable in this matter, R.C. 2744.03(A)(6)(b) affords an employee of a political subdivision immunity from liability unless "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" This section applies to law-enforcement officers the same as it applies to other employees of political subdivisions. Argabrite at ¶ 7.
{¶ 23} "The danger of a high-speed chase alone is not enough to present a genuine issue of material fact concerning whether an officer has acted with a malicious purpose, in bad faith, or in a wanton or reckless manner." Id. at ¶ 16, citing Shalkhauser v. Medina , 148 Ohio App.3d 41, 50-51, 2002-Ohio-222, 772 N.E.2d 129 (9th Dist.2002). The burden necessary to establish that a law enforcement officer is not entitled to immunity is onerous. Argabrite at ¶ 32.
{¶ 24} We have already determined that there is no evidence showing wanton misconduct. "Malicious purpose" has been defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." Jones v. Norwood , 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, 2013 WL 454909, ¶ 42. "Bad faith" has been defined as "evincing a 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.' " Id. , quoting Cook v. Cincinnati , 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (1st Dist.1995). There is no evidence in this case showing that Chief Barone or Patrolman Hoover acted with a malicious purpose or in bad faith.
{¶ 25} The Ohio Supreme Court has described the term "reckless conduct" as follows:
Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. (2 *344 Restatement of the Law 2d, Torts, Section 500 (1965), adopted.)
Anderson, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph four of the syllabus.
{¶ 26} Reasonable minds could not conclude from the evidence in this case that Chief Barone, who was not on duty, or Patrolman Hoover engaged in reckless conduct. Patrolman Hoover was responding to a 911 emergency call and acted with the belief that the driver of the suspect vehicle had been involved in a child abduction. He activated his lights and sirens, maintained contact with dispatch, and engaged in a one- to two- minute pursuit in an attempt to stop the suspect vehicle. The suspect vehicle stopped momentarily at a traffic light, and when the driver accelerated and became erratic, Patrolman Hoover slowed his vehicle. Although the accident was no doubt tragic, the evidence does not reflect a conscious disregard of or an indifference to a known or obvious risk of harm to another. Nor does the evidence reflect conduct that was unreasonable under the circumstances or which could be deemed substantially greater than negligent conduct.
{¶ 27} Although appellees present various arguments in support of their position, the record in this case does not create any genuine issue of material fact. To the extent appellees assert a failure to train, a failure to discipline, and a failure to follow policies and procedures, the record does not demonstrate Patrolman Hoover intentionally violated departmental policy or that any such violation would in all probability result in injury. See Argabrite , 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, at ¶ 25, 30 ; Hoffman v. Gallia Cty. Sheriff's Office , 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, 2017 WL 6541029, ¶ 52 ; Gates v. Leonbruno , 2016-Ohio-5627, 70 N.E.3d 1110, ¶ 50 (8th Dist.).
{¶ 28} Appellees also cite to Hardesty v. Alcantara , 2015-Ohio-4591, 48 N.E.3d 127 (8th Dist.), as supplemental authority. In Hardesty, a genuine issue of material fact was found to exist regarding whether an officer's actions were wanton and reckless when there was evidence that the officer pursued a fleeing suspect in heavy traffic at speeds of 80 to 100 m.p.h., that the suspect drove through traffic signals and intersections without slowing, that the officer's sirens were deactivated during at least some of the pursuit, and that the officer was disciplined for failing to terminate the pursuit. Unlike Hardesty , the record herein shows that there was a 911 emergency report of a child abduction, that the suspect vehicle stopped at a traffic light, that the speeds approached 70 m.p.h., and that the officer's sirens were activated and could be heard on the 911 dispatch recording during the high-speed pursuit and at the time of the reported crash. These cases are factually distinguishable.
{¶ 29} Under the circumstances of this case, viewing the record in the light most favorable to the plaintiffs, we find that there are no genuine issues of material fact in dispute, that the Newburgh Heights defendants are entitled to immunity as a matter of law, and that no reasonable juror could find that Chief Barone or Patrolman Hoover acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
{¶ 30} Judgment reversed; case remanded.
MARY EILEEN KILBANE, P.J., and ANITA LASTER MAYS, J., CONCUR

The complaint has 11 counts and includes a loss of consortium claim by plaintiff Marie Jessica Huffman.

A denial of a motion for summary judgment is generally not a final appealable order. Piazza v. Cuyahoga Cty. , 8th Dist. Cuyahoga No. 104724, 2017-Ohio-8163, 2017 WL 4547147, ¶ 25. However, R.C. 2744.02(C) specifically provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in [R.C. Chapter 2744] or any other provision of law is a final order."