[Cite as *Jones v. Soto*, 2023-Ohio-3107.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| MALCOLM JONES, et al. | | C.A. No. 22CA011870 |
| Appellees | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWIN SOTO, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellants | | CASE No. 21CV203168 |

DECISION AND JOURNAL ENTRY

Dated: September 5, 2023

STEVENSON, Judge.

{¶1} Edwin Soto and Orlando Colon appeal from the judgment of the Lorain County Court of Common Pleas denying their motion for summary judgment. For the following reasons, this Court reverses.

I.

**Background**

{¶2} This appeal arises out of an April 13, 2019, motor vehicle accident between a vehicle in which Malcom Jones and Yesenia Rodriguez ("Appellees") were riding as passengers and a vehicle driven by non-party J.D. At the time of the accident, Officer Edwin Soto and Sergeant Orlando Colon (collectively the "Officers"[1]) were following J.D.'s vehicle due to suspected criminal activity.

---

[1] This Court notes that Sergeant Colon testified during his deposition that he is no longer employed with the Lorain Police Department.

**{¶3}** Appellees filed a complaint against the Officers who, at all relevant times, were employed by the Lorain Police Department. Appellees alleged that the Officers:

> engaged in and participated in a high-speed dangerous police chase of [J.D.], who was a suspect for a non-violent crime, and pursued him off the paved roadway of E. 29th Street, across a large open grassy field located in a residential area where may people live including children and senior citizens, and then back onto the paved roadway on the other side of E. 29th Street.

Appellees alleged that J.D. "emerged from the large open grassy field at a high rate of speed and was being chased by [the Officers]" when J.D. lost control of his vehicle and struck their vehicle, causing injury.

**{¶4}** Appellees further alleged the Officers were not entitled to R.C. 2744.03 immunity because:

> they were engaged in wanton and/or reckless conduct in pursuing a non-violent suspect in a high-speed chase through a residential area, off the roadway, and across an open grassy field located in a residential area at excessive speeds.

Discovery followed and the Officers were deposed.

### Summary Judgment Motions

**{¶5}** The Officers filed a motion for summary judgment on April 13, 2022, arguing they were entitled to immunity under R.C. 2744.03. The Officers indicated in their motion that (1) they were not in a vehicular pursuit at the time J.D. crashed into Appellees, and (2) even if they were in a vehicular pursuit, they did not act recklessly or wantonly under the factors set forth in *Hoffman v. Gallia Cty. Sheriff's Office*, 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, ¶ 49. The Officers also argued they had probable cause to conduct a traffic stop because J.D. was driving without a valid driver's license; they had reasonable suspicion that J.D. was driving while impaired because they observed J.D. swerving in the roadway even before J.D. became aware they were following him, and because J.D. was involved in recent gang-related shootings.

{¶6} In support of their motion, the Officers attached numerous documents, including: (1) the transcripts of their depositions; (2) their affidavits wherein they averred, in part, that they did not see any pedestrians during the incident, and that they "terminated the vehicular pursuit in favor of following [J.D.] using lights and sirens in an effort to warn citizens on the other side of the grass field[;]" (3) a report from an accident reconstructionist indicating, among other things, that J.D. was traveling 64 m.p.h. when he crashed into Appellees' vehicle, that about 31 seconds elapsed from the time the Officers radioed dispatch regarding a fleeing vehicle until they radioed dispatch regarding the crash, and that the length of the field was about 589 feet; (4) Appellees' answers to interrogatories wherein Appellees indicated that the Officers acted recklessly and/or wantonly because they were "chasing [J.D.] across an open field located in a residential area at a high rate of speed"; and, (5) a copy of the Lorain Police Department's policy regarding vehicular pursuits.

{¶7} Appellees filed a memorandum in opposition to the Officers' motion for summary judgment. Appellees argued the Officers were engaged in a high-speed pursuit and that the Officers acted wantonly or recklessly under the factors set forth in *Hoffman*, *supra*. In support of their memorandum in opposition, Appellees attached an affidavit from Mario Rodriguez-Baez, the driver of the vehicle in which they were riding as passengers, who is not a party to their lawsuit, and an affidavit from Ms. Rodriguez. In their affidavits, the driver and Ms. Rodriguez restated the general, conclusory allegations made in their complaint, averring they saw the Officers "following [J.D.'s] car very closely out of the field and [the Officers'] SUV was also traveling at a fast and unsafe rate of speed." Appellees also attached the affidavit and report of Dr. Michael D. Lyman, who opined the Officers violated the departmental pursuit policy.

{¶8}   In their reply, the Officers argued Appellees' averments are "merely allegations previously made in [Appellees'] Complaint, and do[] not in any way refute, rebut, or otherwise qualify the stated speed (20-35 MPH) in which [they] have consistently provided as being their traveling speed across the grassy field."

**Summary Judgment Evidence**

**Deposition of Sergeant Orlando Colon**

{¶9}   Sergeant Colon testified, on April 13, 2019, he was riding in an unmarked SUV with Officer Soto. While on duty, Sergeant Colon saw a known gang member, J.D., driving a black Honda Civic.  Sergeant Colon knew J.D. did not have a valid driver's license because he "had just made intelligence bulletins about [J.D.]" and other known gang members. Further, Sergeant Colon had reasonable suspicion to believe J.D. had been involved in a gang-related shooting earlier that morning, and thought J.D. was likely armed.

{¶10}   Sergeant Colon told Officer Soto to follow J.D.'s vehicle.  Sergeant Colon then observed J.D.'s vehicle speeding and swerving in the roadway.    Sergeant Colon observed J.D. "riding the car in front of him's (sic) bumper, and * * * swerving from side to side behind that car in an aggressive manner."

{¶11}   When the Officers caught up to J.D.'s vehicle, they decided to initiate a traffic stop and activated the SUV's lights and sirens.  According to Sergeant Colon, J.D. looked surprised and began to slowly pull to the side of the road while reaching for something underneath the driver's seat, which Sergeant Colon described as "furtive movements."

{¶12}   J.D. pulled onto a dead-end street, and he "gunned it * * * [p]edal to the metal acceleration, literal smoke coming out of the back tires from the back of [J.D.'s] car as he did so." Because it was a dead-end street, Sergeant Colon thought J.D. was going to abandon his vehicle

and run into a house at the end of the street. At this point, J.D. was far ahead of the Officers. Sergeant Colon testified that the Officers were not in an active vehicular pursuit of J.D. when they turned down the dead-end street.

{¶13} Once the Officers got "a little bit further up the block," Sergeant Colon observed J.D. drive onto a grassy field. By the time the Officers arrived at the field, J.D.'s vehicle was "already almost across the field[.]" Sergeant Colon testified that J.D's vehicle was "skidding back and forth across the field[.]"

{¶14} The Officers proceeded across the grassy field "very slowly." The Officers kept the SUV's lights and sirens activated to alert people of the approaching vehicles. The Officers were still in the grassy field when J.D.'s vehicle crashed into the vehicle in which Appellees were riding as passengers. Because the Officers were so far back, Sergeant Colon did not see J.D. hit a car.

**Deposition of Officer Edwin Soto**

{¶15} Officer Soto testified that on April 13, 2019, he was driving an unmarked SUV with Sergeant Colon riding as a passenger. Sergeant Colon recognized J.D., a known gang member, as the driver of a vehicle. Because Sergeant Colon knew J.D. did not have a valid driver's license and was probably armed, Officer Soto and Sergeant Colon followed J.D.'s vehicle. J.D. began driving "all over the road[,]" and J.D. did not pull over when Officer Soto activated the SUV's lights and sirens. Officer Soto observed J.D.'s vehicle swerving and J.D. "lunging underneath the front seat."

{¶16} Officer Soto observed J.D. accelerate down a dead-end street. Because it was a dead-end street, Officer Soto anticipated J.D. was going to "bail out and run." J.D., however, instead turned and proceeded across a grassy field. Officer Soto estimated that J.D.'s vehicle

traveled "70 plus" miles per hour across the field. Officer Soto testified the Officers were not in an active vehicular pursuit when J.D. turned down the dead-end street.

{¶17} Officer Soto further testified the Officers "weren't very close to [J.D.] at all" when he turned and proceeded across the grassy field. Officer Soto testified that the SUV's lights and sirens were activated and that the Officers were traveling between 20 m.p.h. to 30 m.p.h. across the field. Officer Soto did not traverse faster across the "grassy and uneven" field because he "didn't trust the [SUV] to make it all the way through without becoming disabled." Officer Soto testified that J.D.'s vehicle crashed before the Officers exited the field.

### Affidavit of Sergeant Colon

{¶18} In support of their motion for summary judgment, the Officers also submitted the affidavit of Sergeant Colon. The narrative report of the April 13, 2019, incident was drafted by Sergeant Colon and is attached to his affidavit. Sergeant Colon states in his affidavit that, during the incident, there "were approximately four vehicles in which [J.D.] drove erratically behind" and that, "once [J.D.] passed those vehicles, [he] saw no other vehicles." Sergeant Colon further states in his affidavit that he saw no pedestrians during the entirety of the April 13, 2019, incident and, consistent with his deposition testimony, that:

> [u]pon seeing [J.D.] accelerate 'pedal to the metal' down E. 29th Street at a high rate of speed, Officer Soto and I terminated the vehicular pursuit in favor of following [J.D.] using lights and sirens in an effort to warn citizens on the other side of the grass field.

### Accident Reconstructionist Report

{¶19} The Officers also attached an accident reconstructionist report to their motion for summary judgment. The accident reconstructionist opined that J.D. was traveling 64 m.p.h. when he crashed into Appellees' vehicle; that 31 seconds elapsed from the time the Officers radioed

dispatch regarding a fleeing vehicle until they radioed dispatch regarding the crash, and; that the length of the grassy field was about 589 feet.

{¶20} In addition to the deposition testimony, affidavit, and accident reconstructionist report, the Officers attached Appellees' answer to interrogatories, a Lorain police department criminal intelligence bulletin, and a Lorain police department case report to their motion for summary judgment.

### Affidavits of Yesenia Rodriguez and Mario Rodriguez-Baez

{¶21} In support of their opposition to summary judgment, Appellees filed the affidavits of Ms. Rodriguez and Mr. Rodriguez-Baez who were both inside the vehicle struck by J.D. The nearly identical affidavits restate the conclusory allegations in Appellees' complaint indicating the Officers travelled "at a fast and unsafe rate of speed" in their pursuit of J.D.

### Affidavit and Report of Dr. Michael D. Lyman

{¶22} The Appellees also filed the affidavit and report of Dr. Michael Lyman, an expert on police practices and procedures, who opined the Officers were in "pursuit" of J.D., and their actions were "reckless and unnecessary" because it violated Lorain Police Pursuit Policy 05.41.

### Trial Court Decision

{¶23} The trial court denied the Officers' motion for summary judgment. In so doing, the trial court indicated Appellees "presented conflicting evidence by affidavit that [the Officers'] SUV was traveling at a fast and unsafe speed and that they were traveling very closely behind [J.D.] and that [the Officers'] vehicle was in 'hot pursuit' of [J.D.]" The trial court stated that the Officers were not entitled to summary judgment because credibility determinations were necessary to decide whether the Officers acted in a wanton or reckless manner.

{¶24} The Officers appealed, raising one assignment of error for this Court's review.

II.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY DENYING [THE OFFICERS'] MOTION FOR SUMMARY JUDGMENT, AS OFFICERS ARE ENTITLED TO IMMUNITY UNDER R.C. § 2744; THUS, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT, OFFICERS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW, AND THIS HONORABLE COURT MUST REVERSE THE TRIAL COURT'S DENIAL OF OFFICERS' MOTION FOR SUMMARY JUDGMENT.**

**{¶25}** In their sole assignment of error, the Officers argue the trial court erred in denying them immunity, pursuant to R.C. 2744.03(A)(6), because they did not act in a reckless or wanton manner as a matter of law. This Court agrees.

### Standard of Review for Summary Judgment

**{¶26}** Appellate review of an award of summary judgment is de novo. Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

**R.C. 2744.03(A)(6) – Immunity of Employees of Political Subdivision**

**{¶27}** The Supreme Court of Ohio has stated "the burden necessary to deny immunity to police officers is onerous." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, ¶ 31. As such, "'a police officer  * * *  cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Szefcyk v. Kucirek*, 9th Dist. Lorain No. 15CA010742, 2016-Ohio-171, ¶ 11, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist.1995). In this regard, R.C. 2744.03(A)(6) provides that an "employee is immune from liability unless * * * (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." "These are rigorous standards that will in most circumstances be difficult to establish, especially with respect to a law-enforcement officer carrying out the statutory duty to arrest and detain a person violating the law." *Argabrite* at ¶ 8, citing R.C. 2935.03(A)(1). As the *Argabrite* Court further explained:

> An officer's role in our society creates a unique lens through which to view his or her actions and through which to determine whether those actions may have been malicious, in bad faith, wanton or reckless. We expect law-enforcement officers to protect the public, but that expectation need not mean that an officer must sit idly by while a suspect flees the scene of a crime, particularly when the suspect's flight itself endangers the general public further. The danger of a high-speed chase alone is not enough to present a genuine issue of material fact concerning whether an officer has acted with a malicious purpose, in bad faith or in a wanton or reckless manner.

(Internal citation omitted.) *Id*. at ¶ 16.

**{¶28}** As a preliminary matter, it is undisputed The City of Lorain is a political subdivision of the State of Ohio and the Officers were employees of the Lorain Police Department at the time of the accident. *See* R.C. 2744.01(F) (defining "political subdivision"); R.C. 2744.01(B) (defining "employees"). We further note there is no dispute the Officers were acting within the course and scope of their employment when the accident occurred. The trial court

recognized that, at all times, the Officers "took steps in an attempt to protect the public from the actions of a suspect who they believed may have been involved earlier in a shooting" and the Officers "were carrying out the statutory duty to arrest and detain a person violating the law." As such, the Officers met their burden to show they were entitled to statutory immunity.

## Question of Law Presented

{¶29} "[A] party seeking to exercise a statutory exception bears the burden of demonstrating that exception." *Huber v. State Farm Mut. Auto. Ins. Co.*, 9th Dist. Summit No. 29962, 2022-Ohio-3022, ¶ 55, citing *State ex rel. Nat. Broadcasting Co., Inc. v. City of Cleveland*, 38 Ohio St.3d 79, 83 (1988). Thus, our legal analysis focuses upon whether Appellees, the nonmoving parties, met their burden of pointing to evidence in the record that creates a genuine issue of material fact regarding whether the Officers acted in a wanton or reckless manner in order to rebut the presumption of immunity to which they are statutorily entitled.

## Definition of Wanton Misconduct

{¶30} The Supreme Court of Ohio has defined "wanton misconduct * * * [as] the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 33. *Accord Hawkins v. Ivy*, 50 Ohio St.2d 114 (1977), syllabus ("Where the driver of an automobile fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct."). *See also Tighe v. Diamond*, 149 Ohio St. 520, 526 (1948) (defining wanton misconduct as "an entire absence of all care for the safety of others and an indifference to consequences").

**{¶31}** "A court that is determining whether a defendant engaged in wanton misconduct thus essentially applies a two-part test." *Huber at* ¶ 58. As this Court explained:

> The first question is whether the defendant failed to exercise any care whatsoever towards those to whom he owes a duty of care. This 'requires that we determine the duty [the defendant] owed [to the plaintiff], and also the extent of care' that the defendant exercised. The second question is whether the failure to exercise any care created a great probability that harm will result. This requires courts to 'consider the nature of the hazard created by the circumstances.'

(Internal citations omitted.) *Id.* Generally, "'minimal efforts to warn [are] sufficient to overcome the allegation of wanton misconduct.'" *Id.*, citing *Pisel v. Baking Co.*, 61 Ohio St.2d 142 (1980).

## Definition of Reckless Conduct

**{¶32}** "Reckless conduct," as defined by the Supreme Court of Ohio, is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, 134 Ohio St.3d at 388. To be reckless, "'[t]he actor must be conscious that his conduct will in all probability result in injury.'" *Chunyo v. Gauntner*, 9th Dist. Summit No. 28346, 2017-Ohio-5555, ¶ 9, quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, paragraph three of the syllabus. "[A]n officer's mere negligence in the performance of official duties does not give rise to personal liability." *Hoffman*, 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, at ¶ 37, citing *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 357 (1994).

## Relevant Factors in Determining Wanton or Reckless Conduct

**{¶33}** This Court has adopted multiple factors, as set forth in *Hoffman*, *supra*, relevant to determining whether a law enforcement officer operated a motor vehicle wantonly or recklessly. *See Anderson v. Westlake*, 9th Dist. Lorain No. 19CA011512, 2021-Ohio-4582, ¶ 15; *Huber* at ¶ 59. These factors include, but are not limited to:

(1) the officer's speed; (2) whether the officer was traveling in the correct lane of travel; (3) whether the officer had the right-of-way; (4) the time of day; (5) the weather; (6) the officer's familiarity with the road; (7) the road contour and terrain; (8) whether traffic was light or heavy; (9) whether the officer made invasive maneuvers (i.e., attempting to force the vehicle from the road) or evasive maneuvers (i.e., attempting to avoid a collision); (10) the nature and seriousness of the offense that prompted the emergency; (11) whether the officer possessed a safer alternative; (12) whether the officer admitted to disregarding the consequences of his actions; (13) whether the officer activated the vehicle's lights and siren[]; and (14) whether the officer violated any applicable departmental policy.

*Westlake* at ¶ 15, citing *Hoffman* at ¶ 49. "No one factor is determinative; rather, we must instead consider the totality of the circumstances surrounding the incident." *Huber* at ¶ 59, citing *Westlake* at ¶ 15.

{¶34} Further, as indicated by the Supreme Court of Ohio: "[t]he danger of a high-speed chase alone is not enough to present a genuine issue of material fact concerning whether an officer has acted with a malicious purpose, in bad faith or in a wanton or reckless manner." *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, at ¶ 16. *See also Westlake* at ¶ 36 (although the high-speed pursuit reached speeds of up to 80 miles per hour, occurred at night, proceeded through construction zones, school zones, and densely populated commercial and residential areas, and where possible departmental policy violations occurred, this Court affirmed the granting of summary judgment as the plaintiffs failed to meet their burden in showing that the individual officers acted in a wanton or reckless manner).

## The *Hoffman* Factors

{¶35} Here, according to the record, the Officers followed J.D. into a field during daylight hours because he was a known gang member suspected of being involved in a shooting earlier that day. J.D. began driving erratically prior to entering the field as the Officers drove behind his vehicle. The Officers took no invasive or evasive action. Importantly, in order to prevent an

accident, the Officers attempted to warn citizens of the potential dangers of J.D.'s erratic driving by turning on their lights and sirens.

{¶36} Further, in considering the *Hoffman* factors, the evidence in the record establishes: (1) the field had no posted speed limit; (2) J.D. took the pursuit off road where there was no correct lane of travel or right of way; (3) the incident occurred during daylight hours, with no precipitation; (4) Sergeant Colon was very familiar with the area and field, which allowed him to keep an eye out for any pedestrians; (5) traffic was light in the area and no pedestrians were on the field; (6) the Officers made no invasive or evasive maneuvers; (7) J.D. was a known gang member suspected of being involved in a shooting earlier that day; (8) J.D. made furtive movements in the vehicle by reaching his right hand under the seat; (9) J.D. was believed to be armed; (10) J.D. was driving erratically while the Officers initially followed him at a low rate of speed, and J.D. was driving without a driver's license; (11) the Officers were far enough behind J.D. that they could not see the crash and did not know J.D. hit another vehicle; (12) although Officer Soto admitted that he did not take time to consider "that it might not be safe to drive across this field in a residential area[,]" the Officers did not admit to disregarding the consequences of their actions or a known risk; and (13) the Officers used their lights and sirens to warn individuals that J.D. was driving at a high rate of speed across the field in an effort to prevent an accident. Further, the evidence supports the fact that J.D. drove onto the field while the Officers were still a distance away, which indicates J.D. did so on his own accord and was not chased onto the field by the Officers.

{¶37} Indeed, as indicated above, Appellees attempt to rebut the presumption of immunity by attesting the Officers were traveling "at a fast and unsafe rate of speed." This is a non-specific conclusory restatement of the claims alleged in Appellees' complaint and does not point to a genuine issue of material fact to be litigated. *See Estate of Henderson v. Henderson*, 9th Dist.

Lorain No. 18CA011301, 2018-Ohio-5264, ¶ 9 (recognizing that, for an affidavit to satisfy a non-moving party's reciprocal *Dresher* burden, the affidavit must point to a genuine issue of material fact). *See also Roth v. Tokar Tower Office. Condominiums Unit Owners' Ass'n, Inc.*, 9th Dist. Lorain No. 21CA011811, 2023-Ohio-279, ¶ 22, quoting *Belknap v. Vigorito*, 11th Dist. Trumbull No. 2003-T-0147, 2004-Ohio-7232, ¶ 27 ("Allowing a non-moving party to avoid summary judgment by submitting an affidavit containing nothing more than contradictions of the moving party's claims, 'could enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial.'"). However, even if the Officers had been travelling at a fast rate of speed, in pursuit of J.D., speed is just one of many *Hoffman* factors to consider. Further, based upon this record and as indicated in *Argabrite* speed alone does not create a genuine issue of material fact as to whether the Officers acted in a wanton or reckless manner. *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, at ¶ 16. As such, the affidavits submitted by Appellees are deficient to meet Appellees' reciprocal *Dresher* burden to overcome the presumption of immunity. *See Westlake*, 9th Dist. Lorain No. 19CA011512, 2021-Ohio-4582, at ¶ 36.

{¶38}   Additionally, as to any potential policy violation, this Court has stated:

> while a violation of departmental policy may be relevant to determining the culpability of a course of conduct, it does not equate to per se recklessness. *Anderson* at ¶ 37; *Argabrite* at ¶ 21. Evidence of a policy violation demonstrates negligence, at best, unless there is evidence the actor has knowledge that his "'conduct will in all probability result in injury.'" *Argabrite* at ¶ 21, quoting [*O'Toole v. Denihan*, 118 Ohio St.3d 374 (2008), paragraph three of the syllabus.]

*Westlake* at ¶ 31. Here, Appellees point to no evidence in the record showing the Officers had knowledge their conduct in all probability would result in injury.

**{¶39}** Thus, based upon the *Hoffman* factors and the totality of the circumstances, including the Officers' attempt to warn citizens of the potential danger of J.D.'s erratic driving, the record does not support the Officers acted in a wanton or reckless manner. Accordingly, based upon this Court's de novo review, when reviewing the evidence and all reasonable inferences in a light most favorable to Appellees, we conclude Appellees have not met their burden of pointing to any evidence in the record that creates a genuine issue of material fact regarding whether the Officers acted in a wanton or reckless manner in order to rebut the presumption of immunity to which the Officers are statutorily entitled. Thus, because no exception to immunity applies, the Officers are entitled to statutory immunity as a matter of law.

**{¶40}** Accordingly, the Officers' sole assignment of error is sustained.

### III.

**{¶41}** The Officers' sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed,
cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶42} I respectfully dissent from the majority opinion reversing the trial court's order that denied the Officers' motion for summary judgment. While the trial court addressed the *Hoffman* factors in its decision, it primarily denied the Officers' motion for summary judgment on the basis that the parties presented conflicting evidence as to the Officers' speed while the Officers drove through the field, as well as the proximity of the Officers' SUV to J.D.'s vehicle. The affidavits attached to Appellees' brief in opposition to the Officers' motion for summary judgment indicated that the driver and Ms. Rodriguez saw the Officers driving through the field at a "fast and unsafe rate of speed." They also averred that they saw the Officers "following [J.D.'s] car very closely out of the field and [the Officers'] SUV was also traveling at a fast and unsafe rate of speed." Thus, under Appellees' version of the events, the Officers were speeding through a grassy, uneven field in a residential area inhabited by children and elderly people in the middle of the day. The Officers did this knowing (per Sergeant Colon's deposition testimony) that people walk through

that field during the day to get to retail stores. The Officers also did this while actively pursuing J.D., who (according to the driver and Ms. Rodriguez's affidavits) was also traveling at a fast and unsafe speed, so much so that he lost control of his vehicle when he reentered the roadway. When asked whether he "ever t[ook] the time to consider that it might not be safe to drive across this field in a residential area[,]" Officer Soto responded: "No."

{¶43} The averments in Appellees' affidavits directly contradict the Officers' version of the events and necessarily affect at least one of the *Hoffman* factors, that is, the Officers' speed. *See Hoffman v. Gallia Cnty. Sheriff's Office*, 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, ¶ 49. Under the circumstances of this case, I would conclude that, at a minimum, the conflicting evidence regarding the Officers' speed and their proximity to J.D.'s vehicle while J.D. drove through the field are genuine issues of material fact. In other words, viewing the evidence in a light most favorable to Appellees, I would conclude that Appellees met their reciprocal summary-judgment burden of establishing that a genuine issue of material fact exists as to whether the Officers acted recklessly and/or wantonly under the circumstances presented in this case. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶44} The majority opinion, however, erroneously views the evidence in a light most favorable to the Officers. For example, the majority relies upon the Officers' testimony that: (1) they were driving at a slow rate of speed; (2) they were far enough behind J.D. that they did not even see the crash; and (3) they were not in an active vehicular pursuit, which would have triggered their obligation to follow policies and guidelines regarding vehicular pursuits. The majority concludes that, even if the Officers engaged in a high-speed pursuit of J.D., the Officers did not engage in reckless or wanton conduct. I disagree.

**{¶45}** Far less concerning conduct, albeit in the context of reckless operation of a vehicle under R.C. 4511.20, has been found to be willful and/or wanton conduct. *See, e.g.*, *State v. Tudor*, 11th Dist. Portage No. 2018-P-0018, 2019-Ohio-24, ¶ 13 (upholding the defendant's conviction under R.C. 4511.20 because the defendant "was operating his bicycle for periods of time with no hands on the handle bars while holding a cup in one hand and on a commercial street with traffic, parked cars, and pedestrians present."); *City of Cleveland v. Davis*, 8th Dist. Cuyahoga No. 107138, 2019-Ohio-543, ¶ 21 ("Either driving between traffic lanes or driving with an open car door could constitute a willful or wanton disregard for the safety of persons [for purposes of R.C. 4511.20]."); *Brunswick v. Bilski*, 71 Ohio App.3d 557 (9th Dist.1991) (abruptly stopping a vehicle in a lane of traffic in response to another motorist's sounding of her horn after being cut off by the first driver constitutes wanton and willful conduct for purposes of R.C. 4511.20). I acknowledge the unique position of police officers and the importance of governmental immunity on their ability to perform their jobs, but that immunity is not limitless. While a fact finder might ultimately believe the Officers' version of the events and/or determine that the underlying conduct does not amount to reckless or wanton conduct, I would hold the trial court did not err by declining to do so at the summary-judgment stage in this case. This is especially so considering that "[a] trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor." *See Jacobson v. Akron Children's Hosp.*, 9th Dist. Summit No. 30188, 2023-Ohio-2225, ¶ 11, citing *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when ruling on a motion for summary judgment). Here, the

majority erroneously resolves all competing inferences and questions of credibility in favor of the moving party: the Officers.

{¶46} Additionally, the majority erroneously discounts the affidavits Appellees submitted in support of their brief in opposition to the Officers' motion for summary judgment, categorizing them as general and conclusory. But aside from affidavits from witnesses to the events, it is unclear what evidence, if any, Appellees could have submitted to create a genuine issue of material fact in this case. Moreover, Appellees submitted an expert report from an expert who opined that the Officers engaged in reckless conduct based upon Appellees' version of the events, which the majority fails to acknowledge. Here, I would conclude that Appellees' affidavits, combined with their expert report, pointed to genuine issues of material fact that precluded summary judgment.

{¶47} Moreover, the case law the majority relies upon does not warrant a different conclusion. For example, the majority relies upon this Court's prior decision in *Anderson v. Westlake*, 9th Dist. Lorain No. 19CA011512, 2021-Ohio-4582. There, this Court affirmed the decision of the trial court, which granted the officers' motion for summary judgment on the basis that no genuine issue of material fact existed as to whether the officers acted recklessly during a high-speed chase that resulted in a collision that injured several third parties. *Id.* at ¶ 3, 4, 37. There, unlike here, the parties did not dispute the facts surrounding the pursuit. For example, the officers acknowledged that they engaged in a high-speed pursuit, and dashcam video corroborated some of their version of the events. *See, e.g.*, *id.* at ¶ 18, 19, 20, 25, 35, 41 (citing the dashcam videos). The issue was simply whether those actions amounted to reckless conduct under R.C. 2744.03(A)(6). *See id.* at ¶ 13, 27. Here, the Officers denied engaging in a vehicular pursuit, there was no dashcam video of the incident to corroborate their version of the events, and the Officers' actions themselves are in dispute.

{¶48} The majority also relies upon *Huber v. State Farm Mut. Auto Ins. Co.*, 9th Dist. Summit No. 29962, 2022-Ohio-3022. That case also addresses reckless and wanton conduct in the context of summary judgment in a governmental immunity case. That decision, however, likewise does not support the majority's position. There, eyewitness affidavits, dashcam video (albeit limited), and "Event Data Recorder" data from the police officer's cruiser corroborated the officer's version of the events. *Id.* at ¶ 27-44. Unlike here, the plaintiff in *Huber* "did not present any affidavits or witness testimony in support of his opposition to summary judgment." *Id.* at ¶ 6. *Huber* is distinguishable from the instant case and does not warrant a different conclusion.

{¶49} Having reviewed the record, I would conclude that Appellees met their reciprocal summary-judgment burden of establishing that genuine issues of material fact remain to be litigated. I, therefore, would conclude that the trial court did not err as a matter of law when it denied the Officers' motion for summary judgment. Accordingly, I respectfully dissent.

APPEARANCES:

PATRICK D. RILEY, Law Director, and JOSEPH T. LAVECK, Assistant Law Director, for Appellants.

R. CRAIG MCLAUGHLIN, Attorney at Law, for Appellees.